UNITED STATES v. HOM LIM et al.

(District Court, E. D. New York.    May 22, 1914.)

1. ALIENS (§ 32*)—CHINESE—DEPORTATION—STATUTORY PROVISIONS.

A Chinese person may not be arrested without a warrant or on a war-rant unless based on circumstances showing him to be unlawfully within the United States, within Act Cong. Sept. 13, 1888, c. 1015, § 13, 25 Stat. 479 (U. S. Comp. St. 1901, p. 1317), but a Chinese person who has been lawfully arrested must be adjudged to be unlawfully within the United States, unless he furnishes affirmative proof of his right to remain.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION OF CHINESE—EVIDENCE.

The proof furnished by a Chinese person, on being questioned before his arrest or before he has been subjected to duress by a Chinese inspec-tor or any other person as to his status, may be used against him in deportation proceedings in requiring from him affirmative proof of his right to remain in the United States, to prevent his deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS.

Where a Chinese person is unlawfully within the United States and subject to arrest, any citizen, including a Chinese inspector, may secure the evidence necessary to cause an arrest, or may at his own risk prevent the Chinese person from escaping by restraining him, but such restraint is not the arrest which will throw on the Chinese person the burden of proof of showing his right to remain in the United States, until some facts appear, and a warrant is issued, or until evidence is disclosed on a hear-ing indicating that his presence is unlawful.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

4. CONSTITUTIONAL LAW (§ 252*)—DUE PROCESS OF LAW—DEPORTATION OF CHINESE.

A Chinese person arrested in deportation proceedings is entitled to the protection given by Const. U. S. Amend. 5, and he cannot be deprived of his liberty without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 728–731; Dec. Dig. § 252.*]

5. CITIZENS (§ 3*)—WHO ARE—PERSONS BORN WITHIN THE JURISDICTION.

A Chinese born in the United States is, by virtue of the fourteenth amendment, a citizen of the United States, and he is lawfully within the United States and cannot be arrested without a warrant or on a warrant unless based on a complaint showing a statement of fact by some re-sponsible person from which the charge of unlawful presence in the coun-try may be deduced.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. §§ 2, 13; Dec. Dig. § 3.*]

6. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS.

A Chinese person, whose arrest in deportation proceedings is not based on any facts making the arrest presumptively lawful, cannot be forced into the position of proving his right to remain in the United States, but the entire case must fall for want of right to deport.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS.**

Where, in proceedings to deport a Chinese person, the arrest was made before the issuance of a warrant and on no facts indicating unlawful presence in the United States, and the hearing before the commissioner developed the fact that the Chinese person was apparently a citizen, he should be discharged.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

**8. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS.**

Where a Chinese person entered the United States in the exempt class because entering with his father engaging in the mercantile business in the United States, and also engaged by himself in the mercantile trade, he could not be deported merely because he became a laborer and was a laborer at the time of his arrest.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

**9. ALIENS (§ 23*)—DEPORTATION OF CHINESE—BURDEN OF PROOF.**

Where a Chinese person entered the United States in the exempt class, he could not be deported merely because a doubt was cast on his real status when entering, for the decision of his right to enter was presumptively correct, and the United States must, to obtain his deportation, show persuasively the contrary, unless his entry was fraudulently obtained.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90; Dec. Dig. § 23.*]

**10. ALIENS (§ 23*)—DEPORTATION OF CHINESE—RIGHT TO REMAIN.**

A Chinese person, admitted into the United States as a student, may remain after ceasing to be a student, and he may earn his living in any lawful manner without subjecting himself to deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90; Dec. Dig. § 23.*]

**11. ALIENS (§ 23*)—DEPORTATION.**

Where a Chinese person, born in China, came to the United States when five or six years old with a merchant, and was too young, when the Registration Act was passed, to have any knowledge of the requirement with respect thereto, and he apparently at that time was a merchant, in so far as his status was that of the person with whom he lived and with whom he came to this country, and he later engaged in the laundry business, he could not be deported merely because he was a laborer at the time of his arrest in deportation proceedings.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90; Dec. Dig. § 23.*]

**12. ALIENS (§ 32*)—DEPORTATION.**

Where a Chinese person claimed that he had been born in the United States and had been readmitted to the United States four years before his arrest in deportation proceedings, he could not be deported, in the absence of anything in the papers readmitting him to the United States, contradicting his claim that he was born in the United States, and the mere fact that he could not explain the absence of the readmission papers, which might have been destroyed by fire, did not justify a finding against him; the record of admission being available to the government.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. § 32.*]

Deportation proceedings by the United States against Hom Lim, against Quan Wah, against Lou Chu, against Lee Chee, and against Wong Bit Hing. From orders of deportation, defendants appeal. Reversed, and defendants ordered discharged.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William J. Youngs, U. S. Atty., of Brooklyn, N. Y. (Reuben Wilson, of Brooklyn, N. Y., of counsel), for the United States.

Max J. Kohler, of New York City, for defendant Hom Lim.

James A. Donegan, of New York City, for defendants Quan Wah and Lou Chu.

William Austin Moore, of Brooklyn, N. Y., for defendant Lee Chee.

Amy Wren, of Brooklyn, N. Y., for defendant Wong Bit Hing.

CHATFIELD, District Judge. The law of Congress of May 6, 1882 (22 Stat. 58, c. 126), amended and added to by the act of July 5, 1884 (23 Stat. 115, c. 220 [U. S. Comp. St. 1901, p. 1305]), provides that for ten years thereafter "the coming of Chinese laborers to the United States be suspended," and provides that "it shall not be lawful for any Chinese laborer to come from any foreign port or place, or having so come to remain within the United States."

By section 3 of this act, Chinese laborers in the United States upon November 17, 1880, or coming within 90 days after May 6, 1882, and, by section 6, every Chinese person, other than a laborer, coming to the United States, shall obtain the permission and be identified by the Chinese or other foreign government of which the Chinese person shall be a subject.

Certain provisions regulate the landing of Chinese passengers and the reporting of such passengers by the masters of vessels, and the bringing in of a person not lawfully entitled to enter is made a misdemeanor.

By section 12, the coming of a Chinese person by land is prohibited, except upon the production of such certificate as would be required if landing from a vessel. Any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, after having been brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled, etc. All peace officers of the several states and territories of the United States are hereby invested with the same authority as a marshal or United States marshal in reference to carrying out the provisions of this act.

By section 15, the provisions of the act are made to apply to all subjects of China and Chinese, whether subjects of China or "any other foreign power"; and the words "Chinese laborers" shall be construed to mean both skilled and unskilled laborers.

This law was passed under authority of a treaty made November 17, 1880 (22 Stat. 826), by which the coming of Chinese laborers to the United States, or their residence therein, may be regulated, limited, or suspended, but not absolutely prohibited. The suspension of immigration is to apply only to Chinese who "may go to the United States as laborers."

By article 2, Chinese subjects, such as teachers, students, merchants, or travelers, and Chinese laborers who were already in the United States, are to be allowed to go and come, with the same rights and privileges which are accorded to the citizens and subjects of the most favored nation.

By the act of September 13, 1888 (25 Stat. 476, c. 1015 [U. S. Comp. St. 1901, p. 1312]), re-enacted by the act of April 27, 1904 (33 Stat. 428, c. 1630 [U. S. Comp. St. Supp. 1911, p. 524]), a Chinese laborer who left the United States could not return except under certain conditions, and after presenting a certificate which he had to obtain upon leaving.

By section 13 of this law, "any Chinese person or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested" upon a complaint, under oath, of any party, upon a warrant issued by a justice, judge, or commissioner of the United States court, and returnable before such officer or court, and, upon conviction, deportation is to be had to the country from whence the Chinese person came; i. e., "China." But see, as to a case under the Immigration Law, United States ex rel. Moore v. Sisson, 206 Fed. 450, 124 C. C. A. 356.

By the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]), the laws previously in force were continued for ten years, and it was expressly provided that deportation should be to China, unless the person deported was a citizen or subject of some other country, in which case he should be removed to that country.

By section 3, any Chinese person or person of Chinese descent, arrested under the provisions of these laws, is to be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.

By section 6, all Chinese laborers then within the United States were required to register within the period of one year, and any Chinese person other than a laborer, having the right to such certificate, could obtain one under this law.

By the act of November 3, 1893 (28 Stat. 7, c. 14 [U. S. Comp. St. 1901, p. 1321]), the time for obtaining certificate was extended six months thereafter, or if unavoidably prevented from so doing, and if having been a resident of the United States on May 5, 1892, a certificate might subsequently be granted.

By section 7 of the act of 1892, the Secretary of the Treasury is given authority to make such rules and regulations as may be necessary for the efficient execution of the particular law.

By the act of November 3, 1893 (28 Stat. 7), the terms "laborer" and "merchant" were defined, and it was provided that a Chinaman applying to re-enter the United States, on the ground that he had previously been in this country, as a merchant, must establish that fact by the testimony of two credible witnesses other than Chinese.

By the act of March 3, 1901 (31 Stat. 1093, c. 845 [U. S. Comp. St. 1901, p. 1327]), the United States commissioner, before whom the case should be heard, is to be designated by the United States attorney, and it is provided that no warrant of arrest for violation of the Chinese exclusion laws shall be issued by United States commissioners, excepting upon the sworn complaint of the district attorney, collector, deputy collector, immigration inspector, United States marshal, or Chinese

inspector, etc., unless the issuing of such warrant shall first be approved or requested in writing by the United States attorney.

By the act of April 29, 1902 (32 Stat. 176, c. 641 [U. S. Comp. St. Supp. 1911, p. 524]), as amended by section 5 of the act of April 27, 1904 (33 Stat. 428), the preceding laws and, among others, certain sections of the act of 1892 were re-enacted, extended, and continued, without modification, limitation, or condition. The Secretary of Labor was directed to make such rules and regulations as were necessary to carry out the act, and the laws were extended to apply to the island territory under the jurisdiction of the United States. But this law, in sections 1 and 4, added the words, after "Chinese laborers," which had not been included in any of the previous statutes, "not citizens of the United States."

The Immigration Law of February 20, 1887 (34 Stat. 898, c. 1134), and the subsequent amendments thereto have been held applicable to the exclusion of Chinese.

[1] With the foregoing statement, we will take up in order the several cases now pending in which analogous questions are involved. In each case a United States commissioner has issued a warrant, upon a complaint of a Chinese inspector, to the effect that the person whose arrest was sought was "a Chinese person and not entitled to be and remain in the United States without certificate of residence as required by law." In each case it appears that, before the issuance of the warrant, the Chinese person had been taken into custody by an inspector, without a warrant, upon questions and answers taken down by a stenographer, and obtained while the inspector was inquiring as to the possession of certificates.

It must be observed that no Chinese person or person of Chinese descent may be arrested, even upon a warrant, unless based upon circumstances showing him to be unlawfully within the United States. Section 13, Acts of 1888. A person who has been lawfully "arrested" shall be adjudged to be unlawfully within the United States unless he furnishes affirmative proof of his right to remain. It would render the law unconstitutional if it should be held to allow the arrest and deportation of a person, even where a warrant had been issued, unless the record showed some proof, at least in the way of allegations of fact, that the person arrested was a Chinese person or person of Chinese descent, and that this person was "unlawfully" in the country and had been arrested because of some state of facts prohibited by and within the language of the law.

A Chinese person, then too young to register, or born since May 5, 1892, or in the United States before May 3, 1894 (but not a laborer), who might be found in the United States after the last date, without a certificate, could have come here lawfully in three ways, even though he be a laborer at the time his status was investigated: First, he might have been born in the United States; second, he might have entered the United States under such circumstances as to be exempt from the provisions of the deportation statute; or, third, he could have been in the United States, and not required to register, up to May 3, 1894. Any other Chinese person found in the United States without the cer-

tificate must have come here either before the time of registration or contrary to law, if he arrived after that day.

[2] Upon being questioned by a Chinese inspector or any other person as to his status, before having been arrested or subjected to duress, the proof furnished by himself of his own statements could be used against him, if need be, in requiring from him affirmative proof of his right to remain, in order to prevent his deportation. Bak Kun and Ting Fong v. United States, 195 Fed. 53, 115 C. C. A. 55; United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93; Ark Foo v. United States, 128 Fed. 697, 63 C. C. A. 249. Inconsistent statements can be the basis of a finding of fact as to unlawful presence, even though "citizenship" be claimed. Lee Ah Yin v. United States, 116 Fed. 614, 54 C. C. A. 70; Bak Kun and Ting Fong v. United States, supra; United States v. Too Toy (D. C.) 185 Fed. 840; Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121.

[3] By the earlier law, any peace officer had the same authority as the United States marshal or his deputy, but by the later statute (1892) an arrest can be made only by a Collector of Internal Revenue or his deputies, a customs official, a United States marshal or his deputy. If a person is unlawfully within the United States and subject to arrest, any citizen, including a Chinese inspector, could secure the evidence necessary to cause an arrest, or might, at his own risk, prevent the person from escape. For one not protected by the law and subject to arrest upon properly issued warrant has no more rights than a person having committed a misdemeanor and subject to physical arrest by any citizen until a warrant be obtained. Such restraint could not, however, be the "arrest" which would throw upon the Chinese person the burden of proof until some facts appear and a warrant is issued, or until evidence is disclosed upon the hearing indicating that the presence of the Chinese person is unlawful rather than lawful.

[4] But the fact that the person taken into custody is a Chinese person gives, under the Constitution of the United States, that person no less rights than are given to any other person, not to be deprived of life, liberty, or property, without due process of law. Amendment 5, Constitution of the United States.

## United States v. Hom Lim.

[5] In this case the record shows that, from the time of first questioning by the Chinese inspector, Hom Lim stated, upon being approached and questioned as a Chinese person, that he was born in the United States. By amendment 14 of the Constitution of the United States, all such persons are citizens. United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890. If that statement was true, he was not unlawfully within the United States; he could not be arrested without a warrant, or with a warrant unless that warrant was based upon a complaint showing a statement of fact by some responsible party, from which the charge of unlawful presence could be deduced. Moy Suey v. United States, 147 Fed. 697, 78 C. C. A. 85.

[6] Unless the record shows that an order of arrest could lawfully be made, then the entire case must fall for lack of right to deport.

A person cannot be physically "arrested" without some basis of fact showing unlawful presence, and then be forced into the position of proving his right to remain, when the "arrest" is not based upon any facts making the arrest presumptively lawful. The statement of the Chinaman, or of any other person, when uncontradicted by anything in the case, and when not incredible on its face, is affirmative proof of lawful right to remain. Jung Man v. United States, 128 Fed. 699, 63 C. C. A. 249.

[7] The arrest in this case before the issuance of the warrant, and upon no facts indicating unlawful presence in the United States, was without foundation or legal right. The hearing before the commissioner developed the fact that the Chinaman was apparently a citizen, and he should have been discharged. If, upon the hearing, any basis for the arrest were developed, the defects of the complaint would have been cured. Fong Yue Ting v. United States, 149 U. S. 729, 13 Sup. Ct. 1016, 37 L. Ed. 905. But in the absence of any evidence against the Chinaman, or of any facts raising a presumption of unlawful presence, the warrant of deportation must be vacated. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369.

## United States v. Quan Wah.

[8, 9] As to the case of Quan Wah (upon a similar warrant by a Chinese inspector and the issuance of a warrant upon his verified complaint in exactly the same form as set forth in the preceding case), the testimony shows that the person, admittedly of Chinese descent and born in China, had entered the United States as a merchant, with a certificate properly viséed by the United States Consul, after examination by the immigration authorities, who accepted the certificate as satisfactorily substantiated. The testimony shows that the Chinese person's father had been a merchant in this country, and the son had pursued a mercantile trade, but at the time of arrest he was cooking a meal in a laundry where an inspection was being made of all the Chinese in the place.

The only evidence against the Chinaman, other than the burden cast upon him of proving his right to remain, was his statement to the inspector that his father had been in business (that is, a "laundry" merchant), and that the Chinaman was admittedly not engaged in a mercantile pursuit at the moment of arrest. He testified that he had been visiting a friend who was ill and had been preparing meals for the two days of his stay.

This case raises two questions, one of which has previously been decided, viz., whether, upon credible testimony that the Chinaman entered the United States in the exempt class, he is liable to deportation if he becomes a laborer thereafter; and, second, whether doubt cast upon his real status when entering is a failure on his part to show that he has a right to remain. Both these questions must be answered in favor of the Chinese person. As has been decided in the case of United States v. Lee You Wing (D. C.) 208 Fed. 166, affirmed February 17, 1914, 211 Fed. 939, 128 C. C. A. ——, the importation or the entry of Chinese laborers into the United States is the thing forbidden

by the statute. As to a Chinese then in the United States, only those who remained without proper registration at the time of the former registration law, and who were laborers at the time of the passage of that law, were subject to deportation for their subsequent status. Tom Hong v. United States, 193 U. S. 517, 24 Sup. Ct. 517, 48 L. Ed. 772.

Nor can the fact that the burden of proof to show right to be in the United States is thrown upon the Chinaman necessitate his further showing that the action of the authorities who decided he had the right to enter was correct, unless the evidence shows that his entry was fraudulently obtained. Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888. The decision of his right to enter was presumptively correct, and, unless the United States shows persuasively to the contrary, the mere certificate of admission is sufficient. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Fok Young Yo v. United States, 185 U. S. 296, 22 Sup. Ct. 686, 46 L. Ed. 917; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082.

These facts appeared upon the record before the commissioner who ordered the deportation, and the Chinese person should have been discharged. The order of deportation must therefore be set aside.

## United States v. Lou Chu.

[10] This, like the last case, raises the question of the right of a person of Chinese descent to remain in the United States. The Chinese person was born in China, and was admitted to the United States as a student.

It appears that by the regulations of the Department of Labor, now in force, governing the admission of Chinese, a student who applies for admission must at the time of entry be one who, upon the conclusion of his studies, shall have departed from the United States, unless then found to be qualified to remain. Rule 8, subd. "a." By rule 8, subd. "d", "no applicant admitted as a student shall be permitted to follow in the United States any other occupation than that of studying, unless and until he shall have made application to the immigration officer in charge of the district of his residence for the privilege of changing from that to some other exempt occupation and been granted such privilege."

Inasmuch as the law provides that only persons not lawfully in the United States can be deported, the provision that a man may enter with the right to remain here, but that he shall be prevented from following any occupation except such as meets with the approval of an immigration officer, is a statement which carries with it the answer to the query raised. The regulations seeking to restrict the occupation of the person admitted as a student can be effective only in so far as they are within the law. The provisions as to the manner of departure from the United States of a person who is not yet admitted can hardly be demanded as a condition of admission, and, if admitted, a Chinese student would seem to have the right to stay.

Article 1 of the treaty gives the authority to limit or suspend the coming or residence of Chinese laborers only to those who "came to

the United States as laborers." Other Chinese subjects, including teachers, students, merchants, etc., under article 2, are allowed to come and go of their own free will, and the right to earn a living should be accorded to a student the same as to any other person, under the Constitution of the United States.

If the government desires to show that the original certificate was fraudulent, and that the Chinese person was not a student in coming to this country, such determination is within the power of the tribunal ordering deportation, but no other power exists in this respect.

In this case, again, the record before the commissioner shows the facts of lawful entry as a student, and, as a matter of law, the order of deportation was incorrect and should be set aside.

### United States v. Lee Chee.

This case is similar to that of Quan Wah, just decided.

[11] The Chinese person was born in China and came to this country when five or six years old, with a merchant, and, when the registration act was passed, was too young to have knowledge of any of the requirements with respect thereto. He apparently at that time was a merchant, in so far as his status was that of the person with whom he lived and with whom he came to this country, and he was not required to register. United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544. He has since been in the laundry business, and was a laborer under the definition of the statutes at the time of arrest.

The only evidence to contradict these statements was some inconsistent answer as to the Chinese person's age, which was subsequently explained, and the ambiguous answer of one of the witnesses with respect to his own return from China.

Upon the record, as a matter of law, no deportation could be ordered, and the Chinaman must be discharged.

### United States v. Wong Bit Hing.

[12] This case involves certain questions generally referred to in the previous decisions. Under similar circumstances, the person of Chinese descent was arrested upon answers given through an interpreter, to the Chinese inspector, that he was 36 years old, married, had a son 10 years old and a daughter 12 years old, in China, where he himself was born; that his father was also living in China, where he had gone back 10 years before from the United States; that the father had been a laundryman when in the United States; that the Chinese person himself had been born in San Francisco; and that he had been readmitted to the United States 4 years before the date of the arrest.

A number of witnesses were called to prove the fact that this Chinese person had been seen in San Francisco as a small boy, and in New York after his return. The only suspicious circumstance about the matter is that he was unable to thoroughly explain the absence of the papers upon which he was admitted in San Francisco, and it subsequently developed that they might have been destroyed in a fire. It

also appears that the record of the admission of this Chinese person in San Francisco four years ago is available to the government, and its production would show evidently a right on the part of the Chinaman to enter the United States; if not, presumptively he would not have been admitted upon these papers. But, in the absence of anything which might be shown by these papers to contradict his claim that he was born in the United States, it is impossible to see upon what facts the arrest was made at the outset, and there is no evidence upon which, as a matter of law, an order of deportation could be based.

The order will be set aside, and the Chinaman discharged.