## In re TAM CHUNG.

(District Court, D. Montana. May 29, 1915.)

### No. 191.

1. ALIENS ◎=23—CHINESE—DEPORTATION.

A Chinese student, entering the United States under treaty with China providing that Chinese students shall be permitted to enter with the rights, privileges, immunities, and exemptions accorded to citizens and subjects of the most favored nation, may not be deported because he has become a laborer, and has no Chinese laborer's certificate of residence, notwithstanding the rules adopted by the Secretary of Labor, under Chinese Exclusion Act Sept. 13, 1888, c. 1015, § 8, 25 Stat. 478 (Comp. St. 1913, § 4309), providing for the exclusion of a Chinese student who has completed his studies, and who has not been granted the privilege of remaining and following some exempt occupation, for the Chinese Exclusion Act, providing for identification and admission of Chinese students, does not supersede the treaty.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90; Dec. Dig. ◎=23.]

2. ALIENS ◎=28—CHINESE LABORERS—CERTIFICATE OF RESIDENCE—APPLICABILITY OF STATUTE.

Act Nov. 3, 1893, c. 14, 28 Stat. 7, providing that a Chinese laborer found in the United States without a laborer's certificate shall be deported on failure to obtain a certificate within a certain time after the passage of the act, does not apply to a Chinese student entering the country long subsequent to the act, and he may not be deported on his becoming a laborer, though not obtaining a laborer's certificate of residence.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 88–90; Dec. Dig. ◎=28.]

Application for writ of habeas corpus by Tam Chung for his release from the custody of an immigration inspector about to deport petitioner. Writ granted.

S. C. Ford, of Helena, Mont., for petitioner.

B. K. Wheeler, U. S. Atty., of Butte, Mont., and Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont., for the United States.

BOURQUIN, District Judge. This petitioner for habeas corpus to an immigration inspector about to deport petitioner to China, his birthplace, is a Chinese boy of 17 years, who as a student was admitted to this country in August, 1912. The boy attended school in Washington for one year, then joined his uncle, a restaurant proprietor, in Montana. He immediately engaged an experienced teacher of Chinese, and for 17 months thereafter, and until arrested as hereinafter mentioned, for 1½ hours every day, save Sundays, he was instructed by and recited to her in various elementary studies. To preparation

he devoted about three hours daily, and was a diligent student of good progress.

Living with his uncle, he occasionally helped about the restaurant, perhaps in return for board and lodging not otherwise paid. He was arrested and given a hearing before an immigration inspector, and thereon the Secretary of Labor ordered him deported, for that he had "become a laborer since admission" and had no Chinese laborer's certificate of residence. In this the Secretary applied a rule made by him by virtue of a provision of Chinese Exclusion Act, § 8, 25 Stat. 476, that he may make "rules and regulations not in conflict with" the act, in which rule is prescribed that a student, within our treaty with China and our laws, amongst other things, is one for whose support "adequate financial provision has been made or assured, and who, upon the conclusion of his studies, departs from the United States," or on application to an immigrant officer has been granted the privilege of remaining and following some other exempt occupation, and until which no student "shall be permitted to follow in the United States any other occupation than that of studying."

[1] Our treaty with China provides that Chinese students "shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." 22 Stat. 826. The Chinese Exclusion Act provides for identification and admission of Chinese students, but neither therein nor in any other law has Congress repudiated the aforesaid treaty promise of this nation. Students of all other nations coming hither can of right follow any legitimate vocation contemporaneous with or after their studies are completed, thereto need the consent of no immigration officer, can remain here so long as they please, and cannot be deported because thereof. Chinese students are guaranteed the like rights by our treaty. Having lawfully entered this country, there is no law authorizing their deportation for any reason save that applicable to all aliens, viz., for offenses committed subsequent to entry and connected with or incidental to prostitution.

Perhaps Congress could have broken our plighted faith and treaty by law stipulating that Chinese students should loaf in their leisure and not labor for a living—could have placed Chinese students who here turn to honest labor for a livelihood on the plane of panders and prostitutes so far as deportation is concerned; but, happily, not having done so, it needs no argument to demonstrate that the Secretary of Labor cannot—that it is not given to him to violate the national promise, repudiate the treaty, and convert it into a mere scrap of paper. He is but the creation of Congress, and by it has been given no such power, and his rule in effect assuming it is in conflict with the Exclusion Act and of no validity. Congress has vested him with vast power, judicial in its nature, capable of infinite abuse and tyranny, little restrained by the constitution, procedure, publicity, responsibilities, and traditions that hedge about a court, and little controlled, save by his honor and conscience; but it has its limits, and they have been exceeded here.

That a Chinese lawfully entering this country can lawfully change his vocation, and can labor of right and not of privilege granted by some immigration officer, and that without incurring the penalty of deportation by executive orders or otherwise, is the rule of 20 years' unbroken current of authority, from United States v. Sing Lee (D. C.) 71 Fed. 680, to Ex parte Lew Lin Shew (D. C.) 217 Fed. 317. See United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204; United States v. Lim Yuen et al. (D. C.) 211 Fed. 1001; United States v. Hom Lim et al. (D. C.) 214 Fed. 456; Ex parte Lam Pui (D. C.) 217 Fed. 459. That in the face thereof like executive deportations continue, to put it mildly is amazing, though not incomprehensible to the student of history. And how many poor and friendless Chinese, unable to contest executive orders in the courts, have been so deported in defiance of our treaty, is at least food for disquieting thought. Incidentally the Secretary's rule harks back to the fourteenth century, when in feudal England those in villeinage were prohibited from changing from the calling in which they were bred; but even therein it was by law—act of Parliament—and not by executive orders. Surely those days are gone forever.

[2] In reference to petitioner's want of a Chinese laborer's certificate of residence, the law of 1893 (28 Stat. 7) providing therefor has no application to those entering the country long subsequent. In re Chin Ark Wing (D. C.) 115 Fed. 414. Petitioner is lawfully in this country, entitled to remain, not subject to deportation, and he is discharged from custody.

Writ granted.