# IN THE MATTER OF THE APPLICATION OF HO TIM FOR A WRIT OF HABEAS CORPUS.

## January 15, 1916.

1. *Aliens—Chinese—Deportation—Arrest—Burden of proof:*  An alien Chinese may not be arrested as deportable within the Act of Sept. 13, 1888, c. 1015, sec. 13, 25 Stat. 479, without a warrant based on circumstances showing him to be unlawfully within the United States; but upon such lawful arrest the burden is on him of showing his right to remain.

2. *Same—Deportation—Moral turpitude:*  In considering an alleged offense of moral turpitude as a basis of deportation under the immigration laws, moral turpitude is held to mean moral turpitude according to our own standards and not according to those of alien races.

3. *Same—Same—Hearing—Aid of counsel:*  Claim of an unfair hearing by reason of want of assistance of counsel, overruled.

*Habeas Corpus:*  On petition for writ.

*F. J. Schnack (A. S. Humphreys* with him) for petitioner.
*H. W. Vaughan,* U. S. District Attorney, for respondent.

CLEMONS, J.  [1]  In deciding this case, as the court does, adversely to the petitioner, little more might be said than to remind counsel of the fact that when an alien of the Chinese race seeks to enter the country, or, as here, is lawfully arrested (see *United States v. Hom Lim,* 214 Fed. 456, par. 1, 460, also 461-462) under the provisions of the Chinese immigration laws, the burden is upon him of showing that his status is such or his qualifications are such, as to entitle him either, as the case may be, to land or to remain in the country.  And although in this case of deportation of a person already in the country, the record shows some evidence of a purely hearsay character, evidence not competent, still that fact did not relieve the petitioner of the burden, above stated, which was upon her to show:  (1) that she had not been found within the country in violation of section 6 of the Chinese exclusion

act of May 5, 1892, as amended, being a Chinese laborer not in possession of a certificate of residence; (2) that she had not been found within the country in violation of rule 9, Chinese rules, having secured admission by fraud, and not having been at the time the lawful wife of a member of the exempt classes; and (3) that she had not entered the United States unlawfully as the wife of a domiciled Chinese merchant for the purpose of laboring in the United States and not conducting herself therein as the wife of such merchant—all in order to meet the first three charges made in the warrant of arrest of August 19, 1915, Transcript of Record, pages 59-60, and based upon "facts making the arrest presumptively lawful." See *United States v. Hom Lim,* supra. There might be, as counsel contends, some ground for a distinction, as to burden of proof, between a case of an alien not yet landed and one of an alien landed and then charged with being deportable, but the following provision of statute, 27 Stat. 25, sec. 3, May 5, 1892, nullifies any such distinction:

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully in the United States unless such person shall establish, by affirmative proof to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

See *Chin Bak Kan v. United States,* 186 U. S. 193, 200; *United States v. Hom Lim,* ubi sup.; *Yee Ging v. United States,* 190 Fed. 270, 271-273, the decision in the latter case making, at page 272, this pertinent criticism of a contra decision of Judge Grosscup in *Moy Suey v. United States,* 147 Fed. 697:

"He appears to proceed upon the assumption that a different rule of evidence should be applied to a Chinese person 'physically and politically' in the country from that applicable to such a person who is stopped at the border line and refused admission. . . . The statute makes no such distinction, nor is it to be found, so far as the Court

is advised, in any case decided by the Supreme Court."

Also the suggestive language of Judge Chatfield in *United States v. Hom Lim,* supra, may be referred to:

"It must be observed that no Chinese person or person of Chinese descent may be arrested, even upon a warrant, unless *based upon circumstances showing him to be unlawfully within the United States.* Section 13, Acts of 1888. [For such showing before the above warrant of arrest, which was the second warrant, see Transcript, pages 1-58, and for such showing before the first warrant of arrest, of March 30, 1915, see Id., pages 1-18.] A person who has been lawfully 'arrested' shall be adjudged to be unlawfully within the United States unless he furnishes affirmative proof of his right to remain. It would render the law unconstitutional if it should be held to allow the arrest and deportation of a person, even where a warrant had been issued, unless the record showed some proof, at least in the way of allegations of fact, that the person arrested was a Chinese person or person of Chinese descent, and that this person was 'unlawfully' in the country and had been arrested because of some state of facts prohibited by and within the language of the law."  (At page 460.)

"Unless the record shows that an order of arrest could lawfully be made, [and it does so show] then the entire case must fall for lack of right to deport. A person cannot be physically 'arrested' without some basis of fact showing unlawful presence, and then be forced into the position of proving his right to remain, when the 'arrest' is not based upon any facts making the arrest presumptively lawful."  [But it is so based here.]  (At pages 461-462.)

The cases embraced within the *Hom Lim* decision, supra, are distinguished from the case here by the fact of their want of anything making the warrant of arrest "presumptively lawful".   214 Fed. 461-462.

The language of Mr. Justice Holmes as quoted in *Looe Shee v. North,* 170 Fed. 571 (and see Id., 566, syllabus, par. 2) may suggest that, apart from statute, the burden of showing an alien's status of qualifications to be such as to

entitle him to land may be regarded as continuing to rest upon him even after his permitted entry in case question arises as to his being lawfully in the country under the Immigration Act (the general statute as distinguished from the more strict statutes applying to the Chinese); although it is to be noted that the statute in force and considered by the justice was one creating a three-year term of probation which has since been extended to make such term unlimited in cases involving sexual immorality, 36 Stat. 825-826, —an extension which does not seem, however, to change the principle applied by Mr. Justice Holmes. And see sections 20 and 21 of the Immigration Act as to the three-year limit, still maintained in other cases.

The fact that the Assistant Secretary of Labor was justified, as I am convinced that he was, in finding a failure of the evidence to establish what was claimed for the alien here, is sufficient, then, to determine the case against her.

And so it would not be necessary to regard the additional grounds of the second warrant of arrest, as founded on the general, as distinguished from the Chinese, immigration laws. They are (4) that the petitioner has been found in the United States in violation of 34 Stat. 898, act of Feb. 20, 1907, as amended, in that she has been convicted of or admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to her entry into the United States, and (5) that she has been found in the United States in violation of that statute in that she entered without the inspection by it contemplated and required, having secured admission by means of false and misleading statements (sections 20 and all sections requiring aliens to be inspected). But even the burden of proof as to these last two grounds, which is upon the government (see Bouve, Exclusion of Aliens, 533, 560), has in my opinion been sustained. At all events, under the evidence direct and circumstantial, taken in hearings which were fair, it would not be within the province of this court to

say otherwise. See Id., 523, 546, and 623, citing *Chin Yow
v. United States*, 208 U. S. 8.     The close connection be-
tween the general Immigration Act and the Chinese exclu-
sion laws may here be worthy of some notice,—particu-
larly the provision of section 21 of the former:

"That in case the Secretary of Labor shall be satisfied
that an alien has been found in the United States in viola-
tion of this Act, or that an alien is subject to deportation
under the provisions of this Act *or of any law* of the United
States, he shall cause such alien within the period of three
years after landing or entry therein to be taken into cus-
today and returned to the country whence he came."

[2]   And, for another reason, it is not necessary to go
into the question, whether there was or not, a showing of
the admission of an offense involving moral turpitude,—or,
whether, conceding the fact of the petitioner's concubinage
only, as distinguished from adultery, such concubinage
would, as a matter of law, amount to an offense of moral
turpitude; for this, though stated as a ground of the war-
rant of arrest, was not included in the warrant of deporta-
tion as a ground thereof.     Nevertheless, as the Secretary
might, on the evidence and the circumstances in evidence,
have included this ground in the deportation order, and as
counsel for the alien gave some attention to the question,
I am disposed to make the observation, in line, as I be-
lieve, with my opinions in the cases of *Tome Tanno*, ante,
p. 266, and of *Look Wong*, ante, p. 568, and of *Ko Matsu-
moto*, ante, p. 625, that "moral turpitude" if it means
anything at all must mean moral turpitude according to
our own standards and not according to those of alien races.
This view would set at rest the argument here made, that
it is not in China immoral, and does not involve moral tur-
pitude, to be the concubine of a married man.     But her
admissions were not of mere concubinage, if there is any
moral difference, but of bigamy and adultery; and these
are offenses of moral turpitude.     See *In re Ko Matsumoto*,
supra.

The alien's counsel find in the cases of *United States* v. *Hom Lim*, supra, and *In re Tam Chung*, 223 Fed. 801, something to dispose of ground (1), supra. But I fail to follow them in their view of these cases.

But, apart from the question of the burden of proof above discussed, it is fair to the immigration officers and to the Assistant Secretary of Labor to point out in the record matter supporting rather strongly most, at least, of the charges in the warrant of arrest of August 19, 1915, and of the order of deportation of December 6, 1915 (Transcript, pages 60-61, 70).

For inconsistencies as to fact of death of alien's father, see Id., pages 9, 12, 13, 20, 21, 30, 62, 64.

For inconsistencies, also the alien's absolute admission (the page references to the latter being *italicized*) as to the fact, or otherwise, of her first husband's death, see Id., pages 1, 7-9, 11, 12, 20-23, 24, 28, 30-32, 34-38, 40, 42, 43, *44-47*, 55-58 (alien's own witness), 63-65.

For suggestion that alien came with other intent than that of living with the merchant Goo Nam Kong, by reason of whose status as a merchant she claimed the right to enter, see Id., pages 62, 64 (she wanted to go and live with her alleged husband, but she waited first to stay with her father and "talk things over," yet though her father, after she had been with him for a little [4 months, see page 63], advised her to go back to her alleged husband), 69, (she failed to do so, but went out to work for a considerable time) 63, (and her alleged husband resorted to habeas corpus proceedings in an endeavor to get her on her refusal to go back) 45, 64-65, 69.

As to alien's suspicious change of name, see Id., pages 7, 35, 40, 67, 68; though the Chinese, especially those in business, are sometimes chameleons with regard to names. See Id., page 44.

The following complained of facts may all be disposed

of by the statutory presumption, above discussed, placing the burden upon a Chinese under arrest and investigation as the petitioner then was: that the alien when taken to the immigration station under the first warrant of arrest, that of March 30, 1915, "was informed that if she did not make a statement, a presumption might be taken against her" (Id., page 20) and that the inspector also then stated to her, "These statements are made by different people and we do not know how much of it to believe and how much of it not to believe. Therefore, we are asking you to inform us how much of it is the truth and how much of it is false. If you do not deny the statements, it will be necessary for us, in the absence of any other circumstances to show their falsehood, to believe that the statements made are true" (Id., page 21).

[3] In view of the repeated rulings of this court, e. g., in *In re Ko Matsumoto,* supra, it is useless to discuss the contention that the immigration officers at the time of her arrest under warrant of March 30, 1915, failed to accord the alien a fair hearing in the matters of assistance of counsel and cross-examination of witnesses. And the fact is, that the immigration officers were unusually liberal in regard to counsel though she had no counsel (and sought none so far as the record shows) at her preliminary examination upon her arrest; but very early in the case, after her release on bond of only moderate penalty, she was informed that she "might have a lawyer to represent her during the further proceedings" (Id., page 26) and thereafter she had two most able counsel, who presented witnesses in her behalf and cross-examined witnesses of the government. Id., pages 27-69.

Counsel for the alien make some capital out of the fact that two warrants of arrest were issued, one of March 30, 1915, and the other of August 19, 1915; claiming that the first warrant was discharged, wherefore the evidence must have been insufficient to establish the grounds thereof, and

that after the second warrant issued there was practically nothing more of evidence offered, only testimony as to the meaning and signification of concubinage as practiced in China.   I fail, however, to find in the transcript of the record any suggestion that the first warrant was discharged, much less that the alien was discharged or that she was found not to have been within any of the grounds charged in the first warrant.   The second warrant has the statement, "This warrant supersedes and cancels warrant of arrest issued in this case on March 30, 1915," but that statement is not of necessity to be taken to imply anything in aid of the alien's claim, but inasmuch as an express finding of discharge of the immigrant would be the natural thing in due course of procedure, the inference is much more probable that the second warrant was virtually an amendment of the first to include, as it does, other and more explicit grounds than the first warrant,—in order, it may be, to make the pleadings as it were "conform to the proof."   The language above quoted from the second warrant seems merely to express a conclusion of law,—of course the second warrant "superseded" and therefore operated to "cancel" the first.

Let the petition for a writ of habeas corpus be dismissed.