HANGES et al. v. WHITFIELD, Immigrant Inspector, et al.

(District Court, N. D. Iowa, E. D. December 3, 1913.)

1. HABEAS CORPUS (§ 92*)—PROCEEDINGS FOR DEPORTATION—REVIEW BY HA-
BEAS CORPUS.

In habeas corpus proceedings brought by an alien held for deportation, the court cannot consider the sufficiency of the evidence if properly and fairly taken, but may, and it is its duty to, consider the means of procuring the testimony and its competency and legal admissibility against petitioner, and determine whether or not he has had a fair and impartial hearing.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

2. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION—HEARING.

Under the provisions of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 499), which authorize the arrest and deportation of aliens who have lawfully entered the United States for certain causes subsequently arising, ex parte affidavits may be taken preliminary to and as a basis for an application for a warrant for the arrest of an alien so charged, but such affidavits cannot be again used as evidence against him on his hearing after arrest, at which he is entitled to be represented by counsel and to cross-examine the witness against him.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—IMMIGRATION OFFICERS—OATHS, WHEN AUTHORIZED.

Section 24 of the Immigration Act only authorizes immigration officers to administer oaths, and take and consider evidence touching the right of aliens to enter the United States. This does not authorize such officers to administer oaths in proceedings to banish aliens from the United States for causes arising after they have been rightly admitted thereto; and pretended oaths administered in such proceedings are without authority of law and of no effect.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

4. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION—LEGALITY.

Petitioners, who were aliens lawfully admitted into the United States, were arrested for deportation because of their alleged subsequent acts on ex parte affidavits of others taken by an inspector, who administered the oaths, and forwarded to the department. They were severally examined by the inspector, who procured the affidavits and made the arrests, and on such examinations and the affidavits previously taken he recommended their deportation, although they denied the charges. Until the close of the examination they were not advised of their right to have counsel, and, while the counsel then employed was permitted to introduce evidence in their behalf, they were denied the right to have the persons making the affidavits called for cross-examination and were unable to procure their testimony. *Held*, that the charge against them was not supported by any competent testimony, nor were they given a fair hearing, and that they were entitled to be discharged.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Petition by George Hanges, Demetrios Lampere, Steve Pantza, and Peter Francas against S. L. Whitfield, as Immigration Inspector, and E. Fitzgerald, as Sheriff of Cerro Gordo County, Iowa, for a writ of habeas corpus. Writ granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Williams & Breese and Rule & Shipley, all of Mason City, Iowa, for petitioners.

A. Van Wagenen, U. S. Atty., of Sioux City, Iowa, for defendants.

REED, District Judge. A writ of habeas corpus was issued against the defendants November 12, 1913, upon application of the petitioners therefor, to which the defendants have answered or made return. The evidence taken upon this hearing shows that complaint was made to the Bureau of Immigration some time prior to October 7, 1913, by certain of the police officers of Mason City, Iowa, that the petitioners, who are aliens and citizens of Greece, were or might be unlawfully within the United States. The matter was referred to the defendant S. L. Whitfield, as inspector of the Bureau of Immigration, who procured at Mason City the ex parte statements of certain women and girls, and other persons in that city, which purport to have been sworn to before the defendant Whitfield as such inspector, and tend to show that two of the petitioners, viz., George Hanges and Demetrios Lampere were proprietors of a restaurant in Mason City; that the other two were employed by them in said restaurant as waiters; also, that women and girls who had been previously employed in the restaurant were of ill repute and practiced prostitution in rooms over the same. This so-called testimony was taken in the absence of the petitioners, without notice to them, and was forwarded by the inspector from Mason City to the Bureau of Immigration at Washington, October 23, 1913. On the same day he sent to the Bureau a telegraphic message in cipher requesting that a telegraphic warrant issue for the arrest of the petitioners. Upon receipt of this message the Bureau of Immigration granted the request and sent to the inspector at Mason City a telegraphic message in cipher, which translated reads as follows:

"Western Union Telegraph Co., Washington, D. C., Oct. 24, 1913. "Whitfield, Immigrant Inspector, Mason City, Ia.

"Arrest the following named aliens and bring before yourself for hearing, forwarding record of proceedings to the Department; Demetrios Lampere, Steve Pantza, George Hanges, and Pete Francas. Aliens employed by, in, or in connection with a music or dance hall or other place of amusement or resort habitually frequented by prostitutes or where prostitutes gather. Aliens connected with the management of house of prostitution. Aliens found receiving, sharing in, or deriving benefit from a part or the whole of the earnings of any prostitute. J. B. Densmore, Acting Secretary."

Upon receipt of this warrant Inspector Whitfield arrested the petitioners, and, without informing them of their right to counsel, examined each of them separately and at length, and at the conclusion of the examination asked of each this question:

"Q. Do you understand that you are charged in this warrant with being unlawfully in the United States, in that you are employed in a house of prostitution, music or dance hall, or other place where prostitutes gather; that you are connected with the management of a house of prostitution; that you are found receiving, sharing in, or deriving benefit from a part or the whole of the earnings of prostitutes?"

Each answered: "Yes, I understand."

"Q. Are you satisfied with this hearing that has been given you, or do you desire to be represented by an attorney?"

Each answered: "I want an attorney, or lawyer."

No testimony was taken by the inspector after the receipt of the telegraphic warrant and the arrest and examination of the petitioners. After completing their examination, and taking the testimony in their behalf a few days later, he forwarded to the Bureau of Immigration the copy of the ex parte affidavits taken by him prior to his application for the warrant of arrest and the examination of the petitioners and the testimony taken in their behalf and recommended that warrants issue for the deportation of the petitioners.

There are some 20 of the so-called affidavits taken before the inspector at various times from October 7th to October 23d, inclusive, the date of the application for the warrant of arrest. It would unnecessarily extend this opinion to set forth these alleged affidavits in full or even an abstract of them. It must suffice to say of the contents of the so-called affidavits, and other testimony taken by the inspector, that most of it is but hearsay, and would be inadmissible against the petitioners for any purpose whatever in any judicial proceeding where the established rules of evidence prevail. Some of the girls, however, relate conversations they say they had with some of the petitioners, and some say they had sexual intercourse with one or two of them at places other than in the restaurant or in the rooms over the same. One of the petitioners, George Hanges, admits that he had sexual intercourse with one of the women several months before the hearing, on the farm where she and her husband lived; and another, Steve Pantza, admits that he was at an apartment house in Mason City with another of the girls more than a year before he was examined. Aside from this, the petitioners in the main deny the statements of the women or girls.

The purport of the testimony and the method of procuring it has been thus stated for the reason that the petitioners allege, as a ground for the issuance of the writ and to sustain the same, that they have been denied a legal, fair, and impartial hearing or trial upon the charges against them as grounds for their deportation.

[1] The court will not in proceedings of this character consider the testimony or the weight thereof, if properly and fairly taken, to determine whether or not it is sufficient to warrant the deportation of an alien. That would be for the proper immigration officials to determine. But the court may, and it is its duty to, consider the manner of procuring the testimony, its competency and legal admissibility against the petitioners, and determine whether or not they have had a fair and impartial hearing or trial. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Wong Wing v. United States, 163 U. S. 228, 237, 238, 239, 16 Sup. Ct. 977, 41 L. Ed. 140; United States v. Sibray (C. C.) 178 Fed. 144; United States v. Williams (D. C.) 185 Fed. 398; Roux v. Commissioner of Immigration, 203 Fed. 413, 121 C. C. A. 523; United States v. Williams (D. C.) 193 Fed. 228.

[2] The Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898, as amended by the Act of March 26, 1910, c. 128, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 499), provides, in effect: That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall, upon the warrant of the Secretary of Commerce and Labor (now Secretary of

Labor), be taken into custody and deported to the country whence he came at any time after the date of his entry into the United States. Section 20. That in case the Secretary of Labor shall be satisfied that an alien has been found in the United States in violation of the act, or that an alien is subject to deportation under the provisions thereof, or of any law of the United States, he shall cause such alien to be taken into custody and returned to the country whence he came, in the manner provided by section twenty of the act. Section 21. That the Commissioner General of Immigration shall under the direction of the Secretary of Labor have charge of the administration of all laws relating to the immigration of aliens into the United States, and shall establish such rules and regulations, and issue from time to time such instructions, *not inconsistent with law,* as he shall deem best calculated for carrying out the provisions of the act, and for protecting the United States, and aliens migrating thereto from fraud and loss. Section 22. That immigrant inspectors and other immigration officers, clerks, and employés shall be appointed from time to time by the Secretary of Labor, upon the recommendation of the Commissioner General of Immigration, and that immigration officers shall have power to administer oaths and to take and consider evidence touching the right of any alien *to enter the United States,* and, when necessary, to make a written record of such evidence. Section 24.

Rule 22 of the Immigration Rules of November 15, 1911, so far as applicable, provides that officers shall make thorough investigation of all cases where they are credibly informed or have reason to believe that a specified alien in the United States is subject to arrest and deportation on warrant. Subdivision 1.

The application for the warrant of arrest must state facts bringing the alien within one or more of the classes subject to deportation after entry. The proof of these facts should be the best that can be obtained.

Note: Usually affidavits stating facts on affiants' own knowledge should be obtained. Subdivision 2.

"Execution of warrant of arrest and hearing thereon:

"(a) Upon receipt of a warrant of arrest the alien shall be taken before the person or persons therein described and granted a hearing to enable him to show cause, why he should not be deported. In the discretion of the immigration officer in charge he may, pending determination of his case, be taken into custody or allowed to remain in some place deemed by such officer secure and proper, except that an alien confined in an institution shall, in the absence of special instructions, not be removed therefrom until a warrant of deportation has been issued.

"(b) During the course of the hearing the alien shall be allowed to inspect the warrant of arrest and all the evidence on which it was issued; and at such stage thereof as the officer before whom the hearing is held shall deem proper, he shall be apprised that he may thereafter be represented by counsel and shall be required then and there to state whether he desires counsel or waives the same, and his reply shall be entered on the record. If counsel be selected, he shall be permitted to be present during the further conduct of the hearing, to inspect and make a copy of the minutes of the hearing, so far as it has proceeded, and to offer evidence to meet any evidence theretofore or thereafter presented by the government. Objections and exceptions of counsel shall not be entered on the record, but may be dealt with in an accompanying brief.

"(c) At the close of the hearing the full record shall be forwarded to the Bureau, together with any written argument submitted by counsel, and the recommendations of the examining officer and the officer in charge for determination as to whether or not a warrant for deportation shall issue. * * *"

Aliens who are unable to give bail shall be held in jail only in case no other secure place of detention can be found. Subdivision 5.

Upon receipt of a warrant of deportation, the alien shall be taken into the custody of the immigration officials for deportation and shall thereafter be deported. Subdivision 6.

Testimony may, no doubt, be taken in the form of affidavits, or otherwise, preliminary to, and as a basis for an application for warrants of arrest of specified aliens when the immigration officers are credibly informed, or have good reason to believe, that such aliens are unlawfully within the United States. But is the testimony so taken upon the preliminary hearing, even when lawfully taken, admissible against the aliens upon the hearing required to be given them after warrants for their arrest have issued, to determine whether or not they shall be deported; and may the officer in charge rightly deny to them the right to counsel upon such hearing until after the testimony against them has been completed?

It is not claimed that either of the petitioners entered the United States in violation of any law thereof, or that either belonged to a class who might not have been lawfully admitted thereto at the time he was admitted, and it is now sought to deport them upon the ground alone that they have violated the provisions of the Act of March 26, 1910, which amends section 3 of the Immigration Act of February 20, 1907, by adding thereto the following:

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act."

It is incumbent upon the government to establish by competent evidence that the petitioners or some of them had violated all or some of the provisions of the Immigration Act as so amended after they were admitted to the United States and prior to their arrest. True, the proceeding for this purpose may be summary, and before an executive, or other authorized official of the government; but it must be a lawful proceeding, the charge established by competent evidence, and the aliens afforded a fair hearing and opportunity to discredit or disprove the evidence adduced against them. Such an opportunity requires that they have the benefit of counsel at every stage of the proceedings after their arrest, with the right to cross-examine witnesses whose testimony is to be used against them before the Bureau of Immigration in determining whether or not they should be deported.

The right of cross-examination is one of the principal, as it is one of the surest, tests which the law affords for the ascertainment of the

truth in all disputed matters of fact; and it is indispensable in all judicial proceedings in this country, civil or criminal, that ex parte testimony, even though given under the solemnity of a legal oath or affirmation that it is true, taken in the absence of and without opportunity at some stage of the proceedings to the party against whom it is proposed to be used to cross-examine the witnesses giving such testimony, cannot rightly be used against him. 1 Greenl. Ev. (16th Ed.) § 447; 2 Wigmore on Ev. §§ 1361, 1365; Interstate Commerce Commission v. Louisville & N. R. Co., 227 U. S. 88, 93, 33 Sup. Ct. 185, 57 L. Ed. 431.

[3] In this case it appears without dispute that the petitioners were not informed at any time of their right to counsel until after the inspector had taken the ex parte affidavits and examined the petitioners at length, when at the close of such examination he asked each "if he desired counsel." Upon each answering that he did, the inspector then fixed a time for the further hearing and postponed it accordingly. At such further hearing counsel for the petitioners requested of the inspector that the witnesses whose ex parte affidavits or statements had been previously taken be recalled that they might be cross-examined, which request the inspector denied. Some of the witnesses whose statements were taken by the inspector were called by the petitioners but refused to testify unless the inspector would so request, which request he refused to make. Others of the affiants the petitioners could not procure. They were thus prevented from obtaining their testimony either upon direct or cross examination. True, the petitioners and their counsel were permitted to examine the record, or copy of the testimony taken by the inspector prior to the application for the warrant of arrest; but of what avail was that? That testimony had already been forwarded to the Bureau of Immigration, and an inspection of the record kept by the inspector would only enable them to read what he had written, without opportunity to test its truthfulness by legitimate cross-examination or otherwise. That such testimony is legally admissible in any proceeding in which it is sought to deprive any person, citizen, or alien of his personal or property rights, cannot be successfully maintained.

It is contended in behalf of the inspector that he is authorised under rule 22 of the Bureau of Immigration to arrest and examine the petitioners after the warrant for their arrest was issued, without informing them of their right to counsel, and to deny to them the right upon the hearing required to be given them until such time as he may see fit to thereafter permit them to have counsel. If that is the effect of the rule, it is inconsistent with the usual and uniform procedure in all judicial proceedings under the laws of the United States wherein it is sought to deprive persons lawfully therein of their personal and property rights, and but emphasizes the necessity of immigration officials following strictly the law providing for the deportation of aliens, to the end that they shall not be deported, except upon legal evidence, which establishes with reasonable certainty, at least, the charges upon which it is sought to deport them.

The Immigration Act (section 24) only authorizes immigration officers to administer oaths and to take and consider evidence touch-

ing the right of aliens to enter the United States, and when necessary to make a written record of such evidence. The proceeding against these petitioners is not one touching their right to enter the United States, for they were lawfully admitted thereto at established ports of entry from six to ten years before it was commenced, but is one to deport or banish them from the United States for something they are alleged to have done after having been rightly admitted thereto.

There is no evidence to support the ex parte statements of persons made to the inspector, to whom he administered an oath which he was not authorized to administer, and such pretended oath is without authority of law and of no effect. The Immigration Act and the rules prescribed thereunder evince the purpose to afford an alien a fair opportunity to test the truth of the evidence adduced against him, and to disprove it if he can legally do so. If rule 22, properly interpreted, denies the aliens this right, then it is one not authorized by the Immigration Act. A fair interpretation of that rule, however, only invests the inspector with a discretion as to when he shall permit the alien to have the benefit of counsel upon the hearing required to be given him, and not to deny absolutely such right. Any action of the inspector which results in the denial to the alien of a substantial right to which he is lawfully entitled is unauthorized and cannot rightly be upheld.

The conclusion is unavoidable, under the testimony in this case, that the hearing before the inspector (who acted as prosecutor and judge upon such hearing) has not the semblance of a fair hearing. At the conclusion of such hearing, the petitioners were committed by the inspector to the custody of the jailer of Cerro Gordo county to be there imprisoned until the Bureau of Immigration shall act upon his recommendation that they be deported. Such imprisonment is without lawful authority, and the petitioners are entitled to be discharged therefrom. Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369.

The recommendations of the inspector to the Bureau of Immigration accompanying the ex parte evidence taken by him convinces that it was the murder by one of the affiants of her new-born babe at the farm upon which she lived near Mason City, as stated by her in her affidavit, that largely influenced his recommendation that the petitioners be deported. If any of these petitioners is guilty of that offense, or of any participation therein, the one so guilty should be proceeded against in the proper state courts for that crime; but they cannot rightly be deported from this country because they may have violated some criminal statute of the state of Iowa, unless such violation includes a violation of the Immigration Act, which upon competent proof thereof they may rightly be deported. The proceedings by the Bureau of Immigration in a fair and lawful manner for the deportation of these petitioners should not be interfered with except upon valid grounds. But this proceeding so far as it has progressed has not been a fair and impartial hearing, and only awaits the action of the Bureau of Immigration upon the recommendation of the inspector, which if approved is final, and will result in the immediate and unlawful de-

portation of them, unless released from such order upon the writ of habeas corpus.

The writ issued in this case is therefore sustained, and the petition-. ers discharged from the custody of the inspector and sheriff of Cerro Gordo county; without prejudice, however, to the right of the Bureau of Immigration to proceed against them in a lawful manner for their deportation. It is accordingly so ordered.