UNITED STATES ex rel. NG. SAM et al. v. REDFERN, Commissioner of
Immigration.

(District Court, E. D. Louisiana.   January 23, 1914.)

No. 15,000.

1. ALIENS (§ 32*)—DEPORTATION—WARRANT.
    Where proceedings were instituted against certain Chinese aliens un-
    der the immigration law, and the commissioner found that the aliens had
    entered the United States at a point unknown, from Canada, without the
    inspection required by law, a deportation warrant, directing their return
    to China instead of to Canada, was erroneous.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95;  Dec.
    Dig. § 32.*]

2. ALIENS (§ 32*)—JURISDICTION—ALIENS.
    Where, in proceedings for the deportation of certain Chinese aliens un-
    der the immigration law, the warrant illegally ordered them to be deported
    to China, when it was found that they had entered the United States from
    Canada, it was the duty of the court to take jurisdiction of a writ of ha-
    beas corpus and to determine the merits of the case.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95;  Dec.
    Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION—CHINESE—AUTHORITY OF OFFICERS.
    While the immigration authorities may deport a Chinaman unlawfully
    in the United States under the general immigration act, as well as under
    the Chinese exclusion act, yet if they elect to proceed in the summary
    manner authorized by the immigration laws they must proceed strictly in
    accordance therewith; and hence, having found that the defendant en-
    tered the United States from Canada, there was no authority to return
    him to China, or to any country except that "from whence he came."
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95;  Dec.
    Dig. § 32.*]

4. ALIENS (§ 23*)—DEPORTATION—IMMIGRATION LAW—LIMITATIONS.
    Chinese persons who had been in the country three years were not sub-
    ject to deportation under the immigration laws.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–90;  Dec. Dig.
    § 23.*]

Habeas corpus by the United States, on relation of Ng. Sam and
others, to procure relators' discharge from imprisonment under de-
portation warrants.   Writs made absolute, and relators discharged.

R. M. Moore, of New York City, and B. B. Howard, of New Or-
leans, La., for relators.

Jos. W. Montgomery, Asst. U. S. Atty., of New Orleans, La., for
defendant.

FOSTER, District Judge.   In this case the relators petition for
writs of habeas corpus to release from the custody of the immigration
authorities four Chinese persons, named, respectively, Ng. Sam, Ng.
Tin, Ng. Sing, and Yee Ngall, who were in transit to China via San
Francisco under departmental warrants of deportation.   The main
contention of petitioners is that the Secretary of Labor found that the

said Chinese had entered the United States from Canada, and therefore the Secretary of Labor exceeded his authority in ordering them deported to China. A similar writ was asked for in the case of Mark Wing Hee.

Rules to show cause issued, and the cases were tried at one time. On the hearing, it developing that Mark Wing Hee had been ordered deported by a United States commissioner, and had not availed himself of his right to appeal to the district court, the order to show cause was recalled and the writ denied. With regard to the other four Chinamen, however, writs of habeas corpus issued, and the matter was submitted on the petition and return and a transcript of the proceedings before the department made part of same.

There is some slight difference in the spelling of the names of the parties but there is no doubt as to their identity. The return sets up substantially that they were arrested at Saratoga Springs, N. Y., on November 21, 1913, and on November 24th they were granted a hearing to show cause why they should not be deported from the United States; that thereafter, about December 4th a record of the hearings was transmitted to the Secretary of Labor through the Commissioner General of Immigration, and the then acting Secretary of Labor became satisfied that each of the said aliens was illegally in the United States in violation of the immigration laws, in that each of said Chinese persons was then and there an alien who had entered the United States, at a point unknown, from Canada, on or about the 20th day of November, 1913, at a point other than designated by the immigration authorities, without inspection as required by law, and each of the Chinese persons was likely to become a public charge at the time of said entry, and that, further, each of the Chinese persons was in the United States in violation of the Chinese exclusion laws; that the Acting Secretary of Labor issued his warrant of deportation on the 8th day of December, 1913, and the said persons are held by virtue of the said warrant.

[1, 2] From the return itself, it is evident that the warrant is irregular in that the Assistant Secretary of Labor found that the aliens entered the United States from Canada, yet they are ordered deported to China. This he was without authority to do. U. S. v. Ruiz, 203 Fed. 441, 121 C. C. A. 551. And therefore it is the duty of the court to take jurisdiction and look into the merits of the case. In re Chin Yow, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Redfern v. Halpert, 186 Fed. 150, 108 C. C. A. 262.

[3] While no doubt the immigration authorities may deport a Chinaman unlawfully in the country under the general immigration act, as well as under the provisions of the Chinese exclusion laws, if they elect to proceed in the arbitrary and summary manner authorized by the former, they at least ought to proceed strictly in conformity with its provisions. On the record before me there is not a scintilla of evidence to show when these four Chinese persons came into the United States, except their own testimony, and there is nothing to show they came from Canada at all, or that they are liable to become public charges. There are indeed some suspicious circumstances connected with their taking passage on train at Port Kent, N. Y., but, giving full

weight to the innuendo and hearsay reported by the inspector who investigated them, still there is nothing to show these essential facts.

[4] Under the provisions of the immigration act, these Chinese, though unlawfully in the country, could not be deported after three years. Disregarding the claim of three of them to be American citizens, from their own testimony all of them have been in the United States more than three years, and, while the immigration officers and Secretary of Labor perhaps might arbitrarily disregard this sworn testimony, still if that is eliminated from the case, there is nothing left. Congress has indeed vested the immigration officers with enormous power, subject to no check save their own consciences, but in granting them discretion to arrest and deport any person charged with being an alien and unlawfully in the country, I cannot believe that it was ever intended that they could do so arbitrarily, and without some evidence upon which to base their decision.

Under ordinary circumstances, where the record shows clearly an alien is unlawfully in the country, but the warrant of deportation is defective, the Department of Labor should doubtless be afforded an opportunity of correcting its mistake, but in this case there would seem to be no good reason for so doing as the men can be rearrested under the provisions of the Chinese exclusion laws. And in that event they will have an opportunity of a trial in court, where they may be represented by counsel in fact as well as in theory, and will have compulsory process to obtain witnesses in their own behalf.

The writs will be made absolute, and the prisoners discharged from custody.