Ex parte LAM PUI.

(District Court, E. D. North Carolina. October 26, 1914.)

1. ALIENS (§ 32*)—DEPORTATION OF CHINESE—FAIRNESS OF TRIAL.

On the application of an immigration inspector, made upon his alleged personal knowledge, stating that a Chinese person, in possession of a certificate of admission describing him as a student, was engaged as a laundryman, the Secretary of Labor issued a warrant, to which the application was not attached, directing the inspector to take such person into custody, and charging that he was unlawfully within the United States, in that he entered in violation of "the Chinese exclusion laws (section 21 of the act of February 20, 1907" [U. S. Comp. St. 1913, § 4270]). There was, however, no proof of any violation of the Immigration Act of February 20, 1907, and the warrant of deportation was sought to be sustained on the ground that such person obtained his certificate of admission by falsely representing that he was a student. Upon his arrest he was taken into a room, the door to which was during a part of the time

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

locked, and examined under oath. After having been examined, he was asked if he wished to be represented by counsel, and promptly availed himself of this privilege. *Held* that, in view of the impossibility of such person or his counsel ascertaining from the warrant with what violation of law he was charged, and in view of the delay in permitting him to obtain counsel, he was not accorded the fair and impartial hearing guaranteed to all persons whose liberty is involved.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

2. **ALIENS** (§ 32*)—**DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT.**

The immigration authorities may deport a Chinaman unlawfully in this country under Immigration Act Feb. 20, 1907, § 21, authorizing the Secretary of Commerce and Labor, when satisfied that an alien has been found in the United States in violation of that act, or is subject to deportation under that act or any law of the United States, to cause such alien to be arrested and deported, as well as under the deportation provisions of the Chinese exclusion laws; but if they proceed in the arbitrary and summary manner authorized by the immigration law, they must proceed strictly in conformity with its provisions.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

3. **ALIENS** (§ 28*)—**DEPORTATION OF CHINESE—GROUNDS.**

A Chinese person, procuring a certificate of admission by means of which he enters the United States by false and fraudulent representations, is unlawfully within the United States, in violation of the Chinese Exclusion Act, and may be deported.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 88-90; Dec. Dig. § 28.*]

4. **ALIENS** (§ 32*)—**DEPORTATION OF CHINESE—REVIEW BY HABEAS CORPUS.**

The finding of the Secretary of Labor in a deportation proceeding is final and conclusive, when the proceeding is fairly conducted and the finding is sustained by evidence; but the court on habeas corpus, though it may not weigh the evidence, may determine whether, when tested by well-settled principles, there was evidence giving the Secretary jurisdiction to order the deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

5. **HABEAS CORPUS** (§§ 4, 27*)—**SCOPE OF INQUIRY—JURISDICTION.**

The writ of habeas corpus may not be used as a writ of error; but when the petitioner challenges the jurisdiction of the court or tribunal by whose mandate he is deprived of his liberty, he may do so by habeas corpus, since, if there be no jurisdiction vested in such tribunal to deprive him of his liberty, the mandate upon which the ministerial officer acts is null and void, and the petitioner is unlawfully restrained of his liberty.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 4, 22; Dec. Dig. §§ 4, 27.*]

6. **ALIENS** (§ 32*)—**DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT.**

A Chinese person, in possession of a certificate of admission duly viséed when sought to be deported on the ground that such certificate was obtained by false representations, though not entitled to demand the constitutional guaranties accorded to citizens, is entitled to a fair hearing as near as may be in accordance with the elementary rules of procedure obtaining in all nations having organized government, securing the liberty of its own citizens and those of other nations within its borders by invitation or permission.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT—EVIDENCE.**

When it is sought to deport a Chinese person admitted to the United States upon a certificate of admission duly viséed, it must be shown by evidence, and not merely by suspicious circumstances or conjecture, that he obtained such certificate by means of fraudulent representations.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

**8. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT—EVIDENCE.**

In a proceeding to deport a Chinese person who entered the United States upon a certificate of admission issued to him as a student, on the ground that he was a laborer and obtained such certificate by false representations, evidence *held* insufficient to sustain the charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

**9. EVIDENCE (§ 584*)—NATURE—SUSPICION OR CONJECTURE.**

Evidence is that which brings to the mind a just conviction of the truth or falsehood of any substantive proposition which is asserted or denied; and mere suspicion, conjecture, or speculation is not evidence, and cannot be made the basis for a finding of fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2424, 2426, 2427; Dec. Dig. § 584.*

For other definitions, see Words and Phrases, First. and Second Series, Evidence.]

Petition for writ of habeas corpus by Lam Pui, an alien Chinese in the custody of W. R. Morton, and held for deportation, upon warrant of Hon. W. B. Wilson, Secretary of Labor. Petitioner discharged.

J. H. Ralston, of Washington, D. C., and Thos. W. Davis, of Wilmington, N. C., for petitioners.

Francis D. Winston, U. S. Dist. Atty., of Windsor, N. C., for respondent.

CONNOR, District Judge. [1] The record discloses that on December 27, 1913, upon the application of W. R. Morton, inspector of immigration for North Carolina, Hon. W. B. Wilson, Secretary of Labor, issued his warrant directing said inspector to take petitioner into his custody, charging that he was "unlawfully within the United States, in that he entered in violation of a law thereof, to wit, the Chinese exclusion laws (section 21 of the act of February 20, 1907.)" The inspector was directed to grant petitioner a hearing, to enable him to show cause why he should not be deported in conformity with law, and that, pending further proceedings, he be admitted to bail in the sum of $1,000.

W. R. Morton, inspector, took petitioner into his custody and examined him, the original stenographic notes of which he transmitted to the Secretary of Labor. The Secretary, on April 1, 1914, issued his warrant reciting that, from proofs submitted to him, after due hearing before Inspector W. R. Morton, he had become satisfied that petitioner had been found in the United States in violation of the act of Congress approved February 20, 1907, amended by the act approved March 26, 1910, to wit:

"That the said alien is unlawfully within the United States, in that he has been found therein in violation of the Chinese exclusion laws, and is, therefore, subject to deportation under the provisions of section 21 of the abovementioned act."

The inspector is directed "to return the said alien to the country whence he came." Pursuant to this warrant W. R. Morton, inspector, took petitioner into his custody for the purpose of deporting him.

On April 13, 1914, a writ of habeas corpus was issued by the judge of the District Court of the United States, directed to the said W. R. Morton, commanding him to produce the body of petitioner before him, to the end that the cause of his detention be inquired into, etc. The respondent made return to the writ, setting forth the proceedings herein recited, and averring that, in obedience to said warrant, it was his purpose to deport petitioner. He moved the judge to dismiss the writ and remand the petitioner to his custody. Petitioner resisted said motion and moved that he be discharged. He assigned, as grounds to sustain his motion:

(1) That he had not had a fair and impartial trial before the inspector in charge of immigration, or the Department of Labor and Commerce, for that the said petitioner, when arrested by W. R. Morton, inspector in charge of immigration, was by him taken to the grand jury room in the United States courthouse, the door to which was part of the time locked, and was there examined and catechised by the said W. R. Morton, and refused to be permitted to consult with counsel until after examination by the said W. R. Morton was completed to his satisfaction, after which he was permitted to consult counsel.

(2) That the Secretary of Labor was without authority or jurisdiction to issue said warrant, or direct the deportation of petitioner, for that no evidence or proof to sustain the charge made in the original warrant, or the finding in the order of deportation, had been submitted to the said Secretary, and without such proof the said proceeding and warrant were void and of no legal effect.

Before proceeding to the consideration of the merits of petitioner's motion for his discharge, it is proper to note the fact that there was in the mind of the draughtsman of the warrant for deportation some confusion of thought. The allegation made against the petitioner, and found by the Secretary of Labor to be true, as the basis for his order, is that:

"He is unlawfully within the United States in violation of a law thereof, to wit, the Chinese exclusion laws (section 21 of the act of February 20, 1907)," and "that the said alien is unlawfully within the United States, in that he has been found therein in violation of the Chinese exclusion laws, and is, therefore, subject to deportation, under the provisions of section 21 of the above-mentioned act."

The examination taken by the inspector, being the "proofs" upon which the "findings" of the Secretary are based, fails to disclose a violation of any of the provisions or prohibitions of the act of February 20, 1907, being the Immigration Act. Section 21 of that act contains no prohibition of entry or right to remain in the United States, but confers upon the Secretary of Labor authority—

"upon being satisfied that an alien has been found in the United States, in violation of this act, or that an alien is subject to deportation under the pro-

visions of this act, or any other law of the United States, to cause such alien to be taken into custody and returned to the country whence he came."

The proceeding instituted by W. R. Morton, inspector, and upon which the order for·deportation. is based, began with the statement of the inspector to the Secretary of Labor, being his application for a warrant of arrest, bearing date December 26, 1913, in which he says:

"When this Chinaman arrived at San Francisco, Cal., he was in possession of a section 6 certificate, describing him as a student, destined to Oakland, California. Judging from the date of his arrival in this country and the length of time he has been at Wilmington, N. C., where he now resides, his departure for Wilmington must have been immediately after his admission, showing that the Oakland, California, destination was fictitious. He is engaged as a laundryman, and has been for the past two years, at the Sam Lee laundry, 126 Market street, Wilmington, N. C. He is in possession of certificate of identity No. 5619."

Upon this statement, petitioner was rightfully in the United States, unless, as suggested by the·inspector, he obtained his certificate, which, it is conceded, had been properly viséed, by making a fraudulent representation in respect to his status as a student. It is manifest, therefore, that in no aspect of the case was he in the United States in violation of.the provisions of the act of February 20, 1907. It thus appears that the petitioner was not informed by the terms of the warrant wherein he had violated the Chinese Exclusion Act. It would seem that, in a proceeding the result of which is fraught with such serious results to the alien, it would be· a reasonable requirement that petitioner ·should, by the terms of the warrant, be informed of the character of the charge against him.

[2] The real purpose of the proceeding. is to invalidate the certificate upon which he was admitted into the United States. It is conceded that the language of section 21 of the act of February 20, 1907, confers upon the Secretary of Commerce power upon being satisfied that petitioner was subject to deportation under "any law of the United States," and this, of course, includes the Chinese exclusion laws. United States v. Wong You, 223 U. S. 67, 32 Sup. Ct. 195, 56 L. Ed. 354. As is well said by Judge Foster, in United States v. Redfern (D. C.) 210 Fed. 548:

"While no doubt the immigration authorities may deport a Chinaman unlawfully in the country under the general immigration act, as well as under the provisions of the Chinese exclusion laws, if they elect to proceed in the arbitrary and summary manner authorized by the former, they at least ought to proceed strictly in conformity with its provisions."

Without any disposition to take a technical or narrow view of the record, although the liberty and rights of a citizen of a friendly power, with whom our government has entered into treaty relations, the terms of which are clear, is involved, it is worthy of note that the language of the warrant of deportation is far from clear. It does not show under what law, or upon what facts, the Secretary bases his conclusion. He says that:

"From the proofs submitted to me, after due hearing before Inspector in Charge W. R. Morton, held at Wilmington, N. C., I have become satisfied that

the alien, Lam Pui, who landed at San Francisco, Cal., ex S. S. Korea, on the 8th day of September, 1911, has been found in the United States in violation of the act of Congress approved February 20, 1907, amended by the act approved March 26, 1910, to wit: That the said alien is unlawfully within the United States in violation of the Chinese exclusion laws, and therefore subject to deportation under the provisions of section 21 of the above-mentioned act."

There is not a scintilla of evidence that the petitioner has committed any of the acts prohibited by Act Feb. 20, 1907, § 2. It is further conceded that he has "a section 6 certificate duly viséed." The questions, therefore, are whether petitioner was given a fair hearing, and whether there is any evidence in this record that he obtained his certificate by falsely representing himself to be a student, whereas he was, in truth, a laborer and entered in violation of the Chinese exclusion laws. That this is respondent's contention appears from his return to the writ of habeas corpus. He says repeatedly in his return that said "certificate was fraudulently obtained"—"that it was obtained upon a false and fraudulent statement and concealment of the real purpose of the alien in coming to the United States."

[3] It is conceded that, if it be proven that petitioner procured a certificate of admission by false and fraudulent representations, he may be deported. He is unlawfully within the United States in violation of the Chinese Exclusion Act. United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204; United States v. Lim Yuen (D. C.) 211 Fed. 1001.

[4] Assuming that, although the warrant is rather obscurely phrased, the Secretary of Labor has so found upon the proofs submitted to him, the question arises whether such finding is final and not open to review upon a writ of habeas corpus. It is settled beyond controversy that such finding is final and conclusive when the proceeding is fairly conducted and sustained by "evidence." In Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, it is said:

"In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings, it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute."

See Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967.

It is contended by petitioner that the examination had by the inspector at Wilmington, N. C., was unfair, and that it utterly fails to disclose any evidence that he was a laborer at that time, or that he procured his certificate of admission by false or fraudulent representations. These questions, he insists, can be raised upon the return to a writ of habeas corpus—that it is the only remedy open to him. Redfern v. Halpert, 186 Fed. 150, 108 C. C. A. 262, and many other cases.

[5] It is well settled, by numerous decisions of the Supreme Court, that the writ may not be used as a writ of error. When, however, the petitioner challenges the jurisdiction of the court or the tribunal by whose mandate he is deprived of his liberty and is held in custody, he may do so upon the return to the writ of habeas corpus. If there be no jurisdiction, no power vested in the tribunal, or officer to deprive

him of his liberty, the mandate upon which the ministerial officer acts is utterly null and void, and petitioner is unlawfully restrained of his liberty. United States v. Tsuji, 199 Fed. 750, 118 C. C. A. 188.

[6] The question is discussed, the authorities cited, and the line of demarcation between those cases in which the writ of habeas corpus may, and those in which it may not, be resorted to, in Harlan v. Mc-Gourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849. Petitioner insists that the statute confers jurisdiction upon the Secretary of Labor to deport only "when he is satisfied that an alien has been found in the United States in violation of this act, or that he is subject to deportation under the provisions of this act, or of any law of the United States"; that this power may not be exercised arbitrarily and without evidence, meaning thereby proof of the fact upon which the order of deportation is founded. That such is the construction put upon the statute by the Secretary is shown by the rules adopted and promulgated for its administration and enforcement. Attention is called to rule 22, which requires officers to make thorough investigation of all cases of which they have information, and to report the same to the immigrant officials, etc. By subdivision 2 of this rule the officer is required to make application for a warrant, stating the facts bringing the alien within the provisions of the statute, and requiring that the proofs of such facts be the best that can be obtained.

While a statute conferring power to summarily hear and determine rights of person or property, and make final orders affecting such rights, will be so construed as to effectuate the purpose of the legislative department of the government, in respect to its administration, those methods of procedure which experience has demonstrated to be necessary for the protection of such rights against oppressive and arbitrary conduct will be enforced. The courts will not weaken the efficiency of the legislation, or the power conferred upon the administrative officer; but they will not sacrifice substantial and essential rights to summary procedure. This principle is especially applicable when human liberty is involved. While the petitioner is not entitled to demand the constitutional guaranties accorded to our citizens of birth and adoption, he is entitled, by virtue of the certificate issued and passed upon by the lawful authorities, under the supreme law of the land—the treaty between this republic and China—to demand that he be accorded a fair hearing, as near as may be in accordance with elementary rules of procedure obtaining in all nations having organized government, securing the liberty of its own citizens and those of other nations within its borders by invitation or permission.

Such has been the uniform holding of the federal courts. In Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888, the alien had been admitted as a student holding a certificate, as does the petitioner. The District Court adopted the finding of the Commissioner of Immigration that he had obtained the certificate by false representations. Upon appeal the judgment was reversed. Mr. Justice Day said:

"When this young man entered a port of the United States in July, 1899, he presented such a certificate (as the law required) duly issued and viséed by the consular representative of the United States. Upon application for

admission this certificate is prima facie evidence of the facts set forth therein. * * * This certificate is the method which the two countries contracted in the treaty should establish a right of admission of students and others of the excepted class into the United States, and certainly it ought to be entitled to some weight in determining the rights of the one thus admitted. While this certificate may be overcome by proper evidence, and may not have the effect of a judicial determination, yet, being made in conformity to the treaty, and upon it the Chinaman having been duly admitted to a residence in this country, he cannot be deported, as in this case, because of wrongfully entering the United States upon a fraudulent certificate, unless there is some competent evidence to overcome the legal effect of the certificate. In this record we find no competent testimony which would overcome such legal effect of the certificate, and the plaintiff * * * was * * * wrongfully ordered to be deported."

In Hanges v. Whitfield (D. C.) 209 Fed. 675, upon the return to a writ of habeas corpus, petitioner being in custody under a warrant directing his deportation, Reed, District Judge, said:

"The court will not in proceedings of this character consider the testimony or the weight thereof, if properly and fairly taken, to determine whether or not it is sufficient to warrant the deportation of an alien. That would be for the proper immigration officials to determine. But the court may, and it is its duty to, consider the manner of procuring the testimony, its competency and legal admissibility against the petitioners, and determine whether or not they have had a fair and impartial hearing or trial."

This ruling is abundantly sustained by the words of Mr. Justice Holmes in Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 58 L. Ed. 369, and other cases cited in the opinion.

In United States v. Redfern (D. C.) 210 Fed. 548, Foster, District Judge, says:

"Congress has, indeed, vested the immigration officers with enormous power, subject to no check save their own consciences; but in granting them discretion to arrest and deport any person charged with being an alien and unlawfully in the country, I cannot believe that it was ever intended that they could do so arbitrarily, and without some evidence upon which to base their decision."

In United States v. Quan Wah (D. C.) 214 Fed. 462, Chatfield, District Judge, says:

"Nor can the fact that the burden of proof to show right to be in the United States is thrown upon the Chinaman necessitate his further showing that the action of the authorities who decided he had the right to enter was correct, unless the evidence shows that his entry was fraudulently obtained. * * * The decision of his right to enter was presumptively correct, and unless the United States shows persuasively to the contrary, the mere certificate of admission is sufficient."

See, also, United States v. Lou Chu (D. C.) 214 Fed. 463.

[7] Those decisions establish the principle, so just and consistent with conceptions of American jurisprudence, that, before an alien admitted to the United States as a member of the exempt class can be deported, it must be shown by evidence, not merely suspicious circumstances or conjecture, that he has obtained such admission by means of fraudulent representations. Any other rule would be violative of elementary conceptions of justice and fair dealing. In the light of the language used by the courts, the validity of the return to the

writ must be examined, not for the purpose of weighing or estimating the value of the evidence, but of ascertaining whether, when tested by well-settled principles, the examination had by the inspector constituted evidence upon which the Secretary of Labor had jurisdiction to order the deportation.

[8] It appears, from the examination, that the inspector found petitioner in a laundry, 126 Market street, Wilmington, N. C. He arrested him, and, together with the government interpreter and stenographer, took him into the grand jury room of the United States courthouse, the door to which was a part of the time locked, and proceeded to subject him to an examination under oath. The stenographer's notes are attached to the return to the writ. It appears from the answers of petitioner: That he is 18 years of age, unmarried; father and mother living in China. Neither of them have been in United States. His uncle resides at Oakland, Cal. Petitioner, upon being admitted at San Francisco, went to Oakland, and remained there four or five months; has been in Wilmington "not quite two years," at laundry of Lem Thung, friend of his father. Is attending private school of Mrs. Shaw, 211 Walnut street, Wilmington, N. C.; about one year. The first year he did nothing; stayed in the laundry. Studies second reader and Bible, sometimes. Father in the grocery business in China. Had $500 when he came to this country. Showed immigration officer check for that amount and $20 in gold; gave check to his uncle. He cashed it, and petitioner brought money to Wilmington; check issued by bank in Hong Kong. Has $300 or $400 now. Lem Thung keeps it for him. Can read a little English; spells "a number of words given him by inspector." He answered the following questions:

"How long have you been working for Lem Thung?" "I don't work there; I just stay there." "Do you remember seeing me in that laundry a month or about that time ago?" "I remember a person went in there, but I cannot recognize you." "When I was there you helped me on my overcoat?" "Yes; I remember helping you on your overcoat." "That day you were working in the laundry?" "No; I just stay there. I was killing a chicken, and helped cook a little." "I didn't see you killing chickens; you were handling laundry." "I am not working there; I am attending private school at 211 Walnut street. * * * Then, nobody in town has seen you do any laundry work?" "They may have seen me in there, but I do not think they have seen me work there." "Do you know how to run those machines, then?" "No." "Did you ever wrap up bundles of collars and put tickets on them?" "Sometimes I do. In the summer I help them out a little and wrap up bundles." "What were you doing in that laundry when I came this morning? You were stripped down to your working clothes." "I was helping Lem Thung because he was sick. I had some collars in my hand." "When Lem Thung is sick, and you help him out, what does he give you for the work?" "Nothing." "Does he give you your board?" "I offered him board, but he does not want to take it."

At this stage of the examination the inspector says:

"You have been arrested under a deportation warrant. Do you wish to be represented by counsel?" A. "Yes." (Here the alien is accorded opportunity to retain counsel, which he does. Attorneys Davis & Davis, who appear is his behalf, are advised as to the procedure for submitting a brief and for the conduct of deportment warrants generally.)

The record states that petitioner had certificate of identity No. 5619 in name of Lam Pui, alleged student. It appears that Mr. Davis, coun-

sel for petitioner, after being advised as to his rights, filed affidavits of several persons who corroborated petitioner's statement. Thereafter they were cross-examined by the inspector, when they fully corroborated petitioner's statement. Just why the inspector failed to inform petitioner, before subjecting him to the examination, of his right to have, and an opportunity to procure, counsel, is not easy to understand. Such conduct is so utterly at variance with the course pursued by all judicial officers, both state and federal, that it arrests the attention and jars the conception of fair procedure. It may be that the form in which a number of the questions were framed, involving a charge based upon the alleged personal knowledge of the inspector, and calling for exculpation by the petitioner, throws some light upon the mental attitude of the inspector. This suspicion is strengthened by reference to the fact that the application for the warrant is based, not upon affidavits or statements of others, but upon the alleged personal knowledge of the inspector. He states in the application as his opinion that "it seems more probable that his landing was fraudulent and surreptitious." That petitioner would have retained counsel before the examination was had, if informed of his right to do so, is shown by his prompt acceptance of the privilege when accorded to him. I concur in the opinion of Judge Reed in Hanges v. Whitfield, supra, that the examination—

"must be a lawful proceeding, the charge established by competent evidence, and the aliens afforded a fair hearing and opportunity to discredit or disprove the evidence adduced against them. Such an opportunity requires that they have the benefit of counsel at every stage of the proceedings after their arrest, with the right to cross-examine witnesses whose testimony is to be used against them. * * * The right of cross-examination is one of the principal, as it is one of the surest, tests which the law affords for the ascertainment of the truth in all disputed matters of fact. * * * It is contended in behalf of the inspector that he is authorized under rule 22 of the Bureau of Immigration to arrest and examine the petitioners after the warrant for their arrest was issued, without informing them of their right to counsel, and to deny to them the right upon the hearing required to be given them until such time as he may see fit to thereafter permit them to have counsel. If that is the effect of the rule, it is inconsistent with the usual and uniform procedure in all judicial proceedings under the laws of the United States wherein it is sought to deprive persons lawfully therein of their personal and property rights, and but emphasizes the necessity of immigration officials following strictly the law providing for the deportation of aliens, to the end that they shall not be deported, except upon legal evidence, which establishes, with reasonable certainty, at least, the charges upon which it is sought to deport them."

Long, and frequently sad, experience teaches that when officers intrusted with the administration of laws affecting the liberty of men are permitted to set aside and disregard those safeguards which the wisdom of the ages have set up for the protection of liberty, in respect to those of one race or color, one creed or clime, it is but a short, and easily taken, step to do so when the liberty of the citizen is involved. If necessity, or the public safety, demands that swift, unusual, and summary methods of procedure be permitted, the power should be conferred by the people's representatives in Congress in clear and unmistakable terms, and not by rules of departments conferring such power upon inspectors.

217 F.—30

I venture to think that there was no necessity for the procedure adopted in this case. Petitioner was one of less than a half dozen Chinamen in a city of 30,000 inhabitants, a very large majority of whom were American citizens. There is no suggestion that there was any concealment by petitioner of his residence, or manner of life, or occupation. It would seem that if, pursuing the occupation of a laborer for two years in Wilmington, it would not have been difficult to have found some person who had seen him doing so. Inquisitorial methods of fixing guilt upon persons do not commend themselves to the minds of American lawyers or laymen. They are contrary to the genius of our institutions. Not a single person, other than the inspector, is produced who says that he saw petitioner laboring in the laundry. Those who are produced by petitioner, including the lady who was teaching him, sustain and corroborate his denial. It is worthy of note that, in his sworn return to the writ, the inspector says that petitioner was present at the hearing— .

"in person, and as well was represented by counsel; his attorney, Thos. W. Davis, Esq., being personally present at said hearing, and who represented him now on this proceeding."

This is not that frank, full, and complete statement which the court is entitled to expect from an officer exercising a quasi judicial function. I am clearly of the opinion that the petitioner was not accorded the fair and impartial hearing which our laws guarantee to all persons whose liberty is involved. This is especially true in regard to a citizen of another country, holding a certificate of admission which the Supreme Court says "ought to be entitled to some weight," and not to be set aside for fraud "unless there is some competent evidence to overcome the legal effect of such certificate."

Eliminating the statement of the inspector, improperly inserted in the examination by which it is sought under the guise of a question to establish a fact, is there anything approaching the dignity of evidence of the charge so vaguely made in the warrant? It is manifest that, except as explained by the inspector dehors the warrant, neither the petitioner nor his counsel, when permitted under instructions of the inspector to appear, could have ascertained with what violation of law petitioner was charged. There is a painful obscurity in the entire procedure, except the application for the warrant, which was not attached to it. It must be kept in view that the petitioner is not to be deported because, after being permitted to enter as a student, he has been found laboring in a laundry. This does not constitute a deportable violation of the law. United States v. Lim Yuen (D. C.) 211 Fed. 1001, and cases cited. The charge is that he procured the certificate by false and fraudulent representation. No one swears that he did so; no one testifies that he made any statement which was false. It is conceded that the charge may be established by reasonable and fair inferences to be drawn from evidence.

Petitioner, 18 years of age, comes to this country with $500. He lands at San Francisco and goes to Oakland, Cal., where he resides with his kinsman four or five months, and comes to Wilmington, where Lem Thung, "a bosom friend of my father," resides. During the first

year he does nothing. Thereafter he goes to school, giving the name and residence of the teacher. He spells the words put to him by the inspector. Accepting his statement as true, and it is not denied by any one, he helped the inspector put on his overcoat one time. He killed a chicken and "helped cook a little." "In the summer he helps them out a little and wraps up bundles;" helped Lem Thung "because he was sick; had some collars in my hand"; helped him "sometimes when sick, but not always." If this constitutes evidence, proof of the charge, it is conceded that its weight is for the Secretary of Labor, and the court will not undertake to estimate its value or the finality of its probative force. In Harlan v. McGourin, supra, Mr. Justice Day, quoting the language used in Hyde v. Shine, 199 U. S. 84, 25 Sup. Ct. 764, 50 L. Ed. 90, "In the federal courts * * * it is well settled that upon habeas corpus the court will not weigh the evidence, although if there is an entire lack of evidence to support the accusation the court may order his [petitioner's] discharge," says:

"In so stating, the learned justice * * * was but affirming the rule well established under section 1014 that there must be some testimony before the Commissioner to support the accusation in order to lay the basis for an order of removal; otherwise, the accused could be discharged upon habeas corpus, although the court could not weigh the evidence when the record shows that some evidence was taken."

In United States v. Williams, 200 Fed. 538, 118 C. C. A. 632 (C. C. A., 2d Circuit) Judge Noyes wrote the opinion for the court. Judges Coxe and Ward, thinking that their views upon this point were not expressed clearly, concurring, said:

"The opinion does not, however, make entirely clear our views upon a single point. We think that some evidence must be presented to justify a judgment of deportation and that conclusions of law must have some facts upon which to rest. The immigrant may, in a sense, have a fair hearing, although the conclusions drawn by the executive officers be wholly unsupported by proof."

[9] Text-writers and judges have undertaken to define the word "evidence," as applicable to judicial investigation, with more or less success. Probably no more satisfactory definition is found, for practical purposes, than that given by Mr. Edward Livingstone:

"Evidence is that which brings to the mind a just conviction of the truth or falsehood of any substantive proposition which is asserted or denied." Draft, Code.

It is elementary that in judicial proceedings the question whether the record discloses any evidence is for the court. The weight to be given evidence is for the trier of the issue of fact. It is also elementary that mere suspicion, conjecture, speculation, is not evidence, neither can it be made the basis for finding a fact in issue. The industry of counsel affords a number of illustrative expressions of courts. In People v. Van Zile, 143 N. Y. 372, 38 N. E. 381, Andrews, Chief Justice, says:

"Suspicion cannot give probative force to testimony which in itself is insufficient to establish or to justify an inference of a particular fact."

Judge Caldwell, in Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, well says:

"The sea of suspicion has no shore, and the court that embarks upon it is without rudder or compass."

It may be that, upon a full, fair, hearing, in which petitioner has the benefit of counsel, and all of his rights secured to him, the government will be able to establish the charge made against him. I am of the opinion that such a hearing has not been had, and that no evidence has been adduced upon which the finding that petitioner procured his certificate by false and fraudulent representations can be sustained. These are the only questions presented upon this record.

The petitioner is entitled to be discharged from custody. An order to that effect will be drawn.