Ex parte LAM FUK TAK.

(District Court, E. D. North Carolina.　October 26, 1914.)

1. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT—EVIDENCE.

In a proceeding to deport a Chinese person, who entered the United States upon a certificate of admission issued to him as a merchant, on the ground that the certificate was obtained by false representations, evidence *held* insufficient to sustain this charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION OF CHINESE—PROCEEDINGS TO DEPORT—EVIDENCE.

In a proceeding to deport a Chinese person, it was manifestly improper for the immigration inspector, who had such person in his custody, charged with the duty of giving him an opportunity to show cause why he should not be deported, to insert in the examination his own unverified statement that such person was found engaged in laundry work, without offering himself as a witness in the regular way, and his statement could not support a warrant of deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

Application by Lam Fuk Tak for a writ of habeas corpus. Petitioner discharged.

J. H. Ralston, of Washington, D. C., and Thos. W. Davis, of Washington, N. C., for petitioner.

Francis D. Winston, U. S. Dist. Atty., of Windsor, N. C., for respondent.

CONNOR, District Judge. [1, 2] The procedure in this case was, in all respects, the same as in the Matter of Lam Pui, 217 Fed. 456. The writ of habeas corpus was issued for both petitioners, and heard at the same time. The facts found in the matter of Lam Pui are applicable to petitioner, except in respect to the examination. Petitioner held certificate of identity No. 13574. He was admitted at San Francisco, as a merchant. From his examination, there being no other tes-

---

timony before the Secretary, it appears that petitioner is 30 years of age, married, has two children, had at time of arrest been in United States not quite two months, and brought with him $1,000 in gold, of which he now has $800; has been in Wilmington one month; stays with Lem Thung, 126 Market street. When in China, he was in the feather fan business; also in grocery business. His father was the sole owner of store. He died, and petitioner inherited the business. He sold out the feather fan business; had three partners. Lem Thung is a distant cousin. The sole evidence of his present occupation is found in the answers to the following questions:

"Do you remember seeing me in the Market Street Laundry about a month ago? Yes. How long have you been working there? I am not working there. I am only stopping there, looking for some kind of business. When I saw you there a month ago, and you were working there, you were helping Lem Thung, because he was sick; is that the idea? You mean to tell me that, since you have been in that laundry, you have never done a tap of work of any kind? Except sometimes I take up laundry and put it in the right place. What were you doing in that laundry when I saw you a month ago? Nothing. Does Lem Thung charge you for board down there? No."

At this point the inspector puts in the record:

"On the occasion of a visit to that laundry by the inspector in charge, on or about December 20, 1913, this Chinaman was found engaged in laundry work there—126 Market street."

He is then asked whether he can read and write Chinese, and answers that he can. He is, at this time, told that he has been arrested upon a warrant in deportation proceedings, and asked if he wishes counsel, to which he responds, "Yes."

The same proceeding was had in the case of Lam Pui.

It would seem unnecessary to pursue this investigation. Petitioner, a merchant in China, comes here and is admitted as a merchant, bringing $1,000 in gold, two months since; has been in Wilmington about one month. Except for the statement inserted in the record, not under oath, and doubtless without the knowledge of the petitioner, by the inspector, there is not a scintilla of evidence tending to establish the charge that petitioner obtained his certificate of admission by false or fraudulent representation. It is manifestly improper for an inspector, who has a person in his custody charged with the duty of giving him an opportunity to show cause why he should not be deported, to insert in the examination his own unverified statement regarding the very matter in controversy. If he wishes to become a witness against the alien, he should offer himself in the regular way. The petitioner and his counsel should have an opportunity to confront and cross-examine him.

The statement of the inspector must be stricken out and disregarded. The fact that it is inserted in the record tends strongly to show that petitioner was not given a fair hearing. Eliminating this statement, there is no evidence upon which the order of deportation can be sustained.

Let the petitioner be discharged.